# In The United States District Court For The Middle District of Georgia Macon Division

Azael Dythian Perales et al.,

(Plaintiff's)

Vs.

United States Secret Service et al.,
Office of Government and Public Affirs
245 Murray Ln,
Washington, DC 20223

5200 North Palm Avenue, # 207
Fresno, CA 93704

280 S. Street, # 1111
San Jose, CA 95113

501 I Street, # 12100
Sacramento, CA 95814

**Ranks of the Secret Service**

- Director of Secret Service: Randolph Tex Alles
- Deputy Director
- Chief Operating Officer
- Chief of Staff
- Assistant Director
- Deputy Assistant Director

- Special Agent in Charge
- Deputy Special Agent in Charge
- Assistant Special Agent in Charge
- Assistant to the Special Agent in Charge
- Administrative PT
- Special Agent
- Special Officer
- Uniformed Officer

Vs.

California State Assembly et al.,
( All Active & Acting Members of California State Assembly)

Anthony Rendon (Speaker of the Assembly)
State Capitol
Room 219
Sacramento, CA 95814

**Cecilia Aguiar-Curry**
**Dr. Joaquin Arambula**
Marc Berman
Richard Bloom
Raul Bocanegra
Rob Bonta
Autumn Burke
Anna M. Caballero
Ian C. Calderon
Sabrina Cervantes
Ed Chau
David Chiu
Kansen Chu
Ken Cooley
Jim Cooper
Matthew Dababneh
Tom Daly
Susan Eggman
Jim Frazier
Laura Friedman
Cristina Garcia
Eduardo Garcia
Mike A. Gipson
Todd Gloria
Jimmy Gomez
Lorena Gonzalez
Fletcher
Adam Gray
Timothy S. Grayson

Chris Holden

Jacqui Irwin

Reginald Byron Jones-Sawyer, Sr.

Ash Kalra

Marc Levine

Monique Limón

Evan Low

Kevin McCarty

Jose Medina

Kevin Mullin

Al Muratsuchi

Adrin Nazarian

Patrick O'Donnell

Bill Quirk

Sharon Quirk-Silva

Eloise Gómez Reyes

Sebastian Ridley-Thomas

Freddie Rodriguez

Blanca E. Rubio

Rudy Salas

Miguel Santiago

Mark Stone

Tony Thurmond

Phil Ting

Shirley Weber

Jim Wood


Vs.

United States Department of The Army et al.,
Headquarters: The Pentagon, Arlington County Virginia, U.S.
Robert Speer or Any Acting Secretary of the Army


Orange County Sheriff's Department et al.,
550 N. Flower Street
Santa Ana, CA 92703

Sandra Hutchens e.g.
Don Barnes e.g.
Brian Wayt e.g.
Bob Peterson e.g.
Steve Kea e.g.
Adam Powell e.g.
Mary Izadi e.g.
Robert Beaver e.g.
Jon Briggs e.g.
Jeff Hallock e.g.
Stu Greenburg e.g.
William Baker e.g.
Ray Grangoff e.g.
Lt. Lane Lagaret e.g.
Gail Krause e.g.
Jaimee Blashaw e.g.


Vs.

Dana C. / Doe e.g. (Former and Landlord of 535 Williamson Avenue Fullerton, CA 92832
Jeffery Fowler e.g.  (Former Manager of my Last Residence 535 Williamson Avenue Fullerton, CA
92832 / California License Plate Number (5MVS233)


(Defendant's)


"COMPLAINT"

4

The Defendants are guilty of Espionage and Conspiracy to commit Espionage (colloquially, spying) is the obtaining of information considered secret or confidential without the permission of the holder of the information.[1] Espionage can be committed by an individual or a spy ring (a cooperating group of spies), in the service of a government or a company, or operating independently. The practice is inherently clandestine, as it is by definition unwelcome and in many cases illegal and punishable by law. Espionage is a subset of "intelligence" gathering, which includes espionage as well as information gathering from public sources.

Espionage is often part of an institutional effort by a government or commercial concern. However, the term is generally associated with state spying on potential or actual enemies primarily for military purposes.

"WRIT OF EXECUTION"

The United States federal government (in comparison to the separate states) applies the death penalty for crimes: treason, terrorism, espionage, federal murder, large-scale drug trafficking, and attempting to kill a witness, juror, or court officer in certain cases. Military law allows execution of soldiers for several crimes, thank you.

The Defendants are guilty of Lude and Lascivious behavior.
The Defendants actions are unbecoming of a Secret Service Agent.

**The Defendants are guilty of the following United States Codes CRIMINAL RICO:**
**18 U.S.C. §§ 1961-1968**
18 U.S. Code § 1961 - Definitions
section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud)
(a)
(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
(A)
(i) with the intent to promote the carrying on of specified unlawful activity; or
(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

**C. Person**
Section 1961(3) provides that the definition of "person" "includes any individual or entity capable of holding a legal or beneficial interest in property." This definition is highly significant because it determines who may be a defendant subject to criminal charges or a civil suit under RICO, as well as who may bring a civil RICO suit for treble damages. Clearly, a natural person sec. 52 53 falls within the definition of "person" under section 1961(3). See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-63 (2001). Likewise, RICO's definition of "person" includes a corporation, union, partnership and a sole proprietorship.

In that regard, 18 U.S.C. § 1962 makes it unlawful, for both criminal and civil purposes, for "any person" to violate Section 1962.

In that regard, 18 U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962" may sue for treble damages (emphasis added)

## 18 U.S. Code § 1963 - Criminal penalties

(a) Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provision of State law—
(1) any interest the person has acquired or maintained in violation of section 1962;
(2) any—
(A) interest in;
(B) security of;
(C) claim against; or
(D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962;and
(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

## 18 U.S.C. § 1961(4).

The Supreme Court has squarely held that the term "enterprise" encompasses both legitimate and illegitimate enterprises.

Prosecution under RICO, however, does not require proof that either the defendant or the enterprise was connected to organized crime.

1. RICO's Definition of Enterprise Broadly Encompasses Many Types of Enterprises
Courts have given a broad reading to the term "enterprise." Noting that Congress mandated a liberal construction of the RICO statute in order to effectuate its remedial purposes and pointing to the expansive use of the word "includes" in the statutory definition of the term, courts have held that the list of enumerated entities in Section 1961(4) is not exhaustive but merely illustrative. Thus, the term enterprise includes commercial entities such as corporations (both foreign and domestic), partnerships, sole proprietorships, and cooperatives; benevolent and non-profit 65 66 67 68organizations such as unions and union benefit funds, schools, and political associations. The term enterprise also includes governmental units such as the offices of governors, mayors, state and congressional legislators, courts and judicial offices, police departments and sheriffs' offices, county prosecutors' offices, tax bureaus, fire departments, and executive departments and agencies, as well as municipalities. Indeed, in United States v. Warner, 498 F.3d 78 79
666, 694-97 (7th Cir. 2007), the Seventh Circuit held that the State of Illinois was properly charged as the RICO enterprise that was the victim of corrupt office holders' pattern of racketeering activity. Establishing that the members of the enterprise operated together in a coordinated manner in furtherance of a common purpose may be proven by a wide variety of direct and circumstantial evidence including, but not limited to, inferences from the members' commission of similar racketeering acts in furtherance of a shared objective, financial ties, coordination of activities, community of interests and objectives, interlocking nature of the schemes, and overlapping nature of the wrongful conduct. Moreover, such evidence of the existence of the charged enterprise may be based on uncharged unlawful conduct. The First, Second, Ninth, Eleventh, and District of Columbia Circuits have rejected the more rigid Bledsoe/Riccobene approach, holding instead that an enterprise need not have an ascertainable

6

structure distinct from the pattern of racketeering activity, and that the existence of an enterprise should be evaluated on the totality of the evidence under the principles of Turkette and may be inferred from the evidence establishing the pattern of racketeering activity.

**An Individual May Constitute a RICO Enterprise**

RICO's definition of "enterprise" explicitly "includes any individual." 18 U.S.C. § 1961(4).Indeed, in Salinas v. United States, 522 U.S. 52, 65 (1997), the Supreme Court indicated in dictum that a sole individual could also be a RICO enterprise, stating "though an 'enterprise' under § 1962(c) can exist with only one actor to conduct it, in most instances it will be conducted by more than one person or entity . . . ." Therefore, an individual may be a RICO enterprise, provided that the individual is not both a RICO defendant and the alleged RICO enterprise ,See United States v. DiCaro, 772 F.2d 1314, 1319-20 (7th Cir. 1985) For example, suppose individuals A and B hired individual C, who operated as a professional "hitman" over a period of time, to murder several persons. In these circumstances, individual C could be the RICO enterprise and individuals A and B could be charged as the RICO defendants. However, as a practical matter it is unnecessary to charge an individual as the RICO enterprise, because in such circumstances the Government could charge A, B, and C as an association-in-fact enterprise.

1. Continuity and Relationship - - Sedima, S.P.R.L. and H.J. Inc. v. Northwestern Bell Tel. Co.In Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), the Supreme Court stated that the RICO pattern element required more than merely proving two predicate acts of racketeering. The Court pointed to RICO legislative history indicating that the RICO pattern was not designed to cover merely sporadic or isolated unlawful activity, but rather was intended to cover racketeering activity that demonstrated some "relationship" and "the **threat of continuing [unlawful] activity."** Id. at 496n.14. Accordingly, the Supreme Court ruled that proof of such "continuity plus relationship" was required to establish a RICO pattern in addition to proof of two acts of racketeering.

The Supreme Court held that RICO does not require proof of multiple schemes, stating, in part: We find no support [for the Eighth Circuit's position] . . . that predicate acts of racketeering may form a pattern only when they are part of separate illegal schemes. Supreme Court stated:A "pattern" is an "arrangement or order of things or activity," . . . . It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them "ordered" or arranged."[C}riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." To Constitute a Pattern, it is Not Necessary that the Alleged Racketeering Acts Be Similar or Related Directly to Each Other, Rather A Pattern May Consist of Diversified Racketeering Acts Provided that they are Related to the Alleged Enterprise.

In accordance with the foregoing evidence of Congress' intent underlying RICO, every court of appeals that has decided the issue has held that racketeering acts need not be similar, or directly related to each other; rather, it is sufficient that the racketeering acts are related in some way to the affairs of the charged enterprise As the Third Circuit explained in United States v. Eufrasio, 935 F.2d 553 (3d Cir. 1991).

Nevertheless, courts have repeatedly found that the requisite continuity was established where a scheme to defraud involved more than one victim and multiple mailings or wire transmissions spanned a substantial period of time, or the scheme posed a threat of continuing unlawful activity.

Likewise, pursuant to H.J. Inc.'s fourth illustration, courts have found that the requisite continuity was established where the racketeering acts were "a regular way of conducting defendant's ongoing legitimate business." H.J. Inc., 492 U.S. at 243.

Moreover, a single RICO count may include both alternative grounds for liability, i.e., a pattern of racketeering activity and collection of unlawful debt, or each alternative ground may be the basis for a separate RICO count.

Another issue that arises in connection with Section 1962(a) prosecutions involves the tracing of

investment money. Although a defendant may argue that the Government must trace to the enterprise any monies charged as being invested in violation of Section 1962(a), rigorous tracing is not required.

For example, in United States v. Marino, 277 F.3d 11 (1st Cir. 2002), the court upheld a jury instruction that a person is associated with an association-in-fact enterprise if he knowingly participates, directly or indirectly, in the conduct of the affairs of an enterprise. One need not have an official position in the enterprise to be associated
with it. One need not formally align himself with an enterprise to associate with it. Association may be by means of an informal or loose relationship. To associate has its plain meaning . . . . "Associated" means to be joined, often in a loose relationship, as a partner, fellow worker, colleague, friend, companion, or ally. Thus, although a
person's role in the enterprise may be very minor, a person will still be associated with the enterprise if he knowingly joins with a group of individuals associated in fact who constitute the enterprise.

### Profit-Seeking Motive Is Not Required
In Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994) ("Scheidler"), the Supreme Court held that the RICO statute contains no economic motive requirement, thereby overruling the district court's holding that a profit-seeking motive for either the RICO enterprise or predicate acts was required, and reversing the district court's dismissal of the plaintiff's civil RICO claim. In reaching this decision, the Supreme Court observed that the enterprise in Sections 1962(a) and (b) might "very well be a profit-seeking entity," id. at 259, but that the RICO statute does not mandate that either the enterprise or the racketeering activity have an economic motive. Rather, RICO requires only that the entity be acquired through the use of illegal activity or by money obtained from illegal activities.

To Constitute a Pattern, it is Not Necessary that the Alleged Racketeering Acts be Similar or Related Directly to Each Other, Rather A Pattern May Consist of Diversified Racketeering Acts Provided that they are Related to the Alleged Enterprise. Nevertheless, courts have repeatedly found that the requisite continuity was established
where a scheme to defraud involved more than one victim and multiple mailings or wire transmissions spanned a substantial period of time, or the scheme posed a threat of continuing unlawful activity.

Likewise, pursuant to H.J. Inc.'s fourth illustration, courts have found that the requisite continuity was established where the racketeering acts were "a regular way of conducting defendant's ongoing legitimate business." H.J. Inc., 492 U.S. at 243.136 Moreover, the requisite continuity may be proven by facts external to a defendant's own
racketeering acts, such as the nature of the enterprise and racketeering activities by other members or associates of the enterprise, including evidence of uncharged crimes.

### 6. Single Episode Rule
In response to case law and concerns that continuity may be deficient arising from the potential use of a single, isolated transaction to establish a defendant's pattern of racketeering activity, the Organized Crime and Racketeering Section developed a policy referred to as the "single episode rule." Although the courts have not mandated a single-episode rule (see pp. 94-95 above), OCRS will continue to implement its single episode policy, to ensure that the requisite continuity is satisfied.
### a. Single Episode Rule
The single episode rule is as follows:
When a single act or course of conduct may be charged as multiple offenses or counts under the law governing those particular offenses, it will be presumed that multiple racketeering acts may be charged corresponding to those multiple offenses.Thus, the single episode rule creates a presumption in favor of charging multiple predicate acts when the law permits charging multiple offenses or multiple counts for a given act or course of conduct.

### F. Unlawful Debt
1. Collection of Unlawful Debt Provides an Alternative Ground for RICO Liability.
Participating in the affairs of an enterprise through the "collection of unlawful debt" is an alternative ground for imposing liability under 18 U.S.C. §§ 1962(c) and (d). Likewise, acquiring or maintaining an

interest in an enterprise through the "collection of an unlawful debt" is an alternative ground for imposing liability under
18 U.S.C. §§ 1962(a) and (b). In such cases, the Government's is not required to establish that a defendant engaged, or conspired to engage, in a pattern of racketeering activity since the alternative ground of "collection of unlawful debt" is sufficient to establish liability under 18 U.S.C. § 1962(a), (b), (c), or (d).

Moreover, a single RICO count may include both alternative grounds for liability, i.e., a pattern of racketeering activity and collection of unlawful debt, or each alternative ground may be the basis for a separate RICO count.

Moreover, in Salinas v. United States, 522 U.S. 52, 61-66 (1997), the Supreme Court held that to establish a RICO conspiracy offense under Section 1962(d), there is no requirement that the defendant "himself committed or agreed to commit the two predicate acts requisite for a substantive RICO offense under § 1962(c)." Id. at 61. The Supreme Court explained: A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

"If the government can prove an agreement on an overall objective, it need not prove a defendant personally agreed to commit two predicate acts." United States v. Abbell, 271 F.3d 1286, 1299 (11th Cir. 2001), cert. denied, 537 U.S. 813 (2002); accord Smith, 413 F.3d at 1272; Delgado, 401 F.3d at 296; To, 144 F.3d at 744; Starrett, 55 F.3d at 1544.

In Salinas, 522 U.S. at 63-66, the Supreme Court made clear that while evidence of such an agreement to commit two racketeering acts is sufficient to establish a RICO conspiracy, RICO does not require the plaintiff to prove that the defendant agreed to personally commit two predicate acts of racketeering. It bears repeating (see Section III(D)(1) above), that the Supreme Court explained a second alternative way to prove a RICO conspiracy, stating:
A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. See United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 253-254 (1940).

Moreover, "[r]egardless of the method used to prove the agreement, the government does not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive RICO crime described in the indictment, or knew his fellow conspirators, or was aware of all the details of the conspiracy. That each conspirator may have contemplated participating in different and unrelated crimes is irrelevant." Starrett, 55 F.3d at 1544 (internal quotation marks and citations deleted). Rather, to establish sufficient knowledge, it is only required that the defendant" know the general nature of the conspiracy and that the conspiracy extends beyond his individual role." Rastelli, 870 F.2d at 828 (collecting cases). Furthermore, "[b]ecause conspirators normally  attempt to conceal their conduct, the elements of a conspiracy offense may be established solely by circumstantial evidence. The agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the development and collocation of circumstances." Posada-Rios, 158 F.3d at 857 (citations and internal quotation marks omitted).Accord cases cited in notes 189 & 192 above.
Moreover, it is well-established that proof of a conspiracy is not defeated merely because membership in the conspiracy changes and some defendants cease to participate in it. In addition, each co-conspirator is liable for the acts of all other co-conspirators undertaken in furtherance of the conspiracy both prior to and subsequent to the co-conspirator's joining the conspiracy even if the conspirator did not participate in, or was unaware of, such acts. Moreover, such liability remains even if the defendant has ceased his participation in the conspiracy.

In Salinas, the Supreme Court squarely applied this principle to RICO cases. As explained in Sections III (D)(1) and (2) above, in Salinas, the Supreme Court held that even though a defendant may not be liable for a substantive RICO violation under 18 U.S.C. § 1962(c) unless he himself committed at least two racketeering acts, a defendant, nevertheless, may be liable for a RICO conspiracy offense even if he did

not himself commit or agree to commit at least two racketeering acts. Id. at 61-65. In reaching this conclusion, the Supreme Court relied upon two well-established tenets of conspiracy law which also govern Section 1962(d). The Supreme Court first observed that" a person may conspire for the commission of a crime by a third person." Id. at 64, quoting United States v. Holte, 236 U.S. 140, 144 (1915). The Salinas Court also recognized that "[a] person . . .may be liable for conspiracy even though he was incapable of committing the substantive offense. "Id. at 64, citing United States v. Rabinowich, 238 U.S. 78, 86 (1915); see also cases cited in196 above.

Under RICO, Defendants Are Jointly and Severally Liable for the Total Amount of Forfeiture Declared Every court that has considered the issue has held that each defendant convicted on a RICO charge is jointly and severally liable for the entire amount of forfeiture that was reasonably foreseeable to the defendant. As the Eighth Circuit stated in United States v. Simmons, 154 F.3d. See, e.g., United States v. Gotti, 459 F.3d 296, 347 (2d Cir. 2006) (following Fruchter 249[below]; in a RICO case, each co-defendant is liable for the full amount of the proceeds of the racketeering activity foreseeable to him); United States v. Hively, 437 F.3d 752, 763 (8th Cir. 2006) (RICO defendant is liable for the proceeds of the entire scheme, not just the proceeds of the two (continued...)

200 Santos 128 S. Ct. 2026 (internal citations omitted). However valid this observation might be with regard to money laundering, the merger doctrine has no place in RICO practice because of the wholly different statutory scheme established by 18 U.S.C. § 1962: there can be no merger of the predicate acts of racketeering and the racketeering offense itself. See Section VI (P)(1)(a) and (b) below.

Thus, the forfeiture of gross proceeds under RICO does not raise the specter of imposing greater punishment for related offenses that are subject to the merger doctrine. Furthermore, as stated above, forfeiture of all of the defendant's receipts derived from his unlawful activity is consistent with the longstanding rule of law that a wrongdoer can never acquire a legitimate interest in his unlawful gains. For all of these reasons, OCRS maintains that gross proceeds are subject to forfeiture under Section 1963(a), and, therefore, prosecutors should continue to seek the forfeiture of gross proceed sunder § 1963(a)(3). Challenges to the forfeiture of gross proceeds under RICO that cite Santos 248 should be contested and distinguished on the bases set out above. b. Under RICO, Defendants Are Jointly and Severally Liable for the Total Amount of Forfeiture Declared Every court that has considered the issue has held that each defendant convicted on a RICO charge is jointly and severally liable for

the entire amount of forfeiture that was reasonably foreseeable to the defendant. As the Eighth Circuit stated in United States v. Simmons, 154 F.3d 249(...continued) 249predicate acts on which he was convicted); United States v. Fruchter, 411 F.3d 377, 384 (2d Cir.2005) (RICO defendant is liable for forfeiture of all proceeds of the offense foreseeable to him including proceeds traceable to conduct committed by others and on which he was personally acquitted); Edwards, 303 F.3d at 643 (following Corrado II [below]; defendant, who was not personally involved in one part of the racketeering activity, is jointly and severally liable for money judgment that included the proceeds of that part of the offense because codefendant's commission of it was foreseeable to him); United States v. Corrado, 227 F.3d 543, 554-55 (6th Cir. 2000) (Corrado I) (all defendants in a RICO case are jointly and severally liable for the total amount derived from the scheme; the Government is not required to show that the defendants shared the proceeds of the offense among themselves, nor to establish how much was distributed to a particular defendant); United States v. Corrado, 286 F.3d 934, 938 (6th Cir. 2002) (Corrado II) because a person who collected the proceeds was able to do so because of his participation in a scheme, all members of the scheme are jointly and severally liable). Accord United States v. Infelise, 159 F.3d 300, 301 (7th Cir. 1998); United States v. 250Hurley, 63 F.3d 1, 22 (1st Cir. 1998); United States v. Saccoccia, 58 F.3d 754, 785 (1st Cir. 1995);United States v. Masters, 924 F.2d 1362, 1369-70 (7th Cir.), cert. denied, 500 U.S. 919 (1991); Fleischhauer v. Feltner, 879 F.2d 1290, 1301 (6th Cir. 1989), cert. denied, 493 U.S. 1074 (1990);United States v. Benevento, 836 F.2d 129, 130 (2d Cir.), cert. denied, 486 U.S. 1043 (1988); UnitedStates v. Caporale, 806 F.2d 1487, 1506-09 (11th Cir. 1986), cert. denied, 482 U.S. 917 (1987); United States v. Bloom, 777 F. Supp. 208, 211 (E.D.N.Y. 1991); United States v. Wilson, 742 F. Supp. 905, 909 (E.D. Pa. 1989), aff'd, 909 F. 2d 1478 (3d Cir.), cert. denied, 498 U.S. 1016 (1990).See United States v. Kramer, 73 F.3d 1067, 1076 (11th Cir.), cert. denied, 519 U.S. 1011 251(1996).201765, 769-70 (8th Cir. 1998) (internal citations omitted):Codefendants are properly held jointly and severally liable for the [forfeiture of] proceeds of a RICO enterprise. The government is not required to prove the specific portion of proceeds for which each defendant is responsible. Such a requirement would allow defendants" to mask the allocation of the proceeds to avoid forfeiting them altogether.

(RICO defendant is liable for forfeiture of all proceeds of the offense foreseeable to him including proceeds traceable to conduct committed by others and on which he was personally acquitted ); Edwards, 303 F.3d at 643 (following Corrado II [below]; defendant, who was not personally involved in one part of the racketeering activity, is jointly and severally liable for money judgment that included the proceeds of that part of the offense because codefendant's commission of it was foreseeable to him); United States v. Corrado, 227 F.3d 543, 554-55 (6th Cir. 2000)(Corrado I) (all defendants in a RICO case are jointly and severally liable for the total amount derived from the scheme; the Government is not required to show that the defendants shared the proceeds of the offense among themselves, nor to establish how much was distributed to a particular defendant); United States v. Corrado, 286 F.3d 934, 938 (6th Cir. 2002) (Corrado II) because a person who collected the proceeds was able to do so because of his participation in a scheme, all members of the scheme are jointly and severally liable).

## Substitute Assets
Section 1963(m), in pertinent part, provides that[i]f any property [subject to forfeiture], as a result of any act or omission of the defendant –
(1) cannot be located upon the exercise of due diligence;
(2) has been transferred or sold to, or deposited with, a third party;
(3) has been placed beyond the jurisdiction of the court;
(4) has been substantially diminished in value; or
(5) has been commingled with other property which
cannot be divided without difficulty;
the court shall order the forfeiture of any other property of the defendant up to the value of any property [subject to forfeiture].

This provision, known as the "substitute assets" provision per its companion section in 21 U.S.C. § 853(p), permits the forfeiture of a defendant's otherwise untainted assets when he has dissipated or otherwise disposed of directly forfeitable property of any kind.

In RICO cases, courts have not hesitated to impose substantial forfeitures over Eighth Amendment objections. Such cases are consistent both with RICO's statutory scheme and 342Congress' clear intent that RICO forfeitures be applied broadly.

11. Ancillary Claims Proceedings
Section 1963(l) (which is lower case "L" of this provision) establishes the post-conviction procedures known as the "ancillary claims process," under which third parties may assert claims to forfeited property. Rule 32.2, Fed. R. Crim. P. augments § 1963(l) regarding these processes. While the complexities of ancillary claims litigation is beyond the scope of this Manual, the general procedures are summarized as follows.

See, e.g., Segal, 495 F.3d 826, 840 (7th Cir. 2007) (forfeiture of defendant's entire interest in the RICO enterprise, including portion untainted by the criminal activity, was not excessive in light of the massive, long-running scheme involving millions of dollars); United States v. Najjar, 300 F.3d 466, 486 (4th Cir. 2002).

In order to prevail, the petitioner, who has the burden of proof, must establish by a preponderance of the evidence either: (1) that he had a legal right, title, or an interest in the property superior to the defendant's interest at the time of the acts giving rise to the forfeiture.

In Reves v. Ernst & Young, 507 U.S. 170, 183 (1993), the Supreme Court ruled that the liberal construction provision "is not an invitation to apply RICO to new purposes that Congress never intended." The Court reasoned that the clause "only serves as an aid for resolving an ambiguity; it is not to be used to beget one." Id. at 184. (citations omitted). 406 With these limitations in mind, prosecutors can use the liberal construction clause to argue for favorable interpretations of RICO provisions in order to achieve RICO's remedial purpose. See cases cited in n.405 above.

D. RICO Does Not Require Any Connection to Organized Crime

In 1989, the Supreme Court squarely held that RICO does not require any proof that a RICO defendant or a RICO offense had any nexus to "organized crime." See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 243-49 (1989). Thus, the Supreme Court stated that "the argument for reading an organized crime limitation into RICO . . . . finds no support in the Act's text, and is at odds with the tenor of its legislative history." Id. at 244. The Supreme Court added that "[t]he occasion for Congress' action was the perceived need to combat organized crime. But Congress for cogent reasons chose to enact a more general statute, one which, although it had organized crime as its focus, was not limited in application to organized crime." Id. at 248. Accord Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 260 (1994). Accordingly, the lower courts have uniformly held that RICO does not require any nexus to organized crime.

18 U.S.C. § 1961(1)(B) provides that "any act which is indictable under any of the [listed] provisions of Title 18" may constitute a RICO predicate act of racketeering, including the following offenses that apply extraterritorially:

18 U.S.C. § 1343 relating to wire fraud involving a "wire, radio, or television communication in interstate or foreign commerce." See, e.g., Collazos v. United States, 368 F.3d 190, 200 (2d Cir. 2004); Kim, 246 F.3d at 190-91.

**18 U.S.C. § 1512 relating to tampering with a witness, victim or an informant.**

Moreover, in civil RICO cases involving fraud brought by private litigants, courts have employed two tests adapted from antitrust and securities violations cases. Under the "conduct" test, courts have applied civil RICO extraterritorially where the plaintiff demonstrates: **"(1) that 'conduct material to the completion of the fraud occurred in the United States,' and that (2) the U.S. conduct was the 'direct cause of the alleged injury'"** to the plaintiff. Norex Petroleum Ltd. v. Access Indus., Inc., 2007 WL 2766731 at *4 (S.D.N.Y. Sept. 24, 2007). Under the effects test, civil RICO applies extraterritorially "whenever a predominantly foreign transaction has substantial effects within the United States" or "when extraterritorial conduct is intended to and actually does have a detrimental effect" upon the United States plaintiff's business or property.

## Constitutional Challenges to RICO

1. Vagueness Challenges

In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989), the Supreme Court reversed the Eighth Circuit's holding that required proof of multiple schemes in order to establish the pattern-of-racketeering element of RICO. In a concurring opinion written by Justice Scalia, four Justices expressed their concern about the difficulty in defining a pattern of racketeering activity. stating: No constitutional challenge to this law has been raised in the present case, and so that issue is not before us. That the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that challenge is presented. 492 U.S. at 255-56 (Scalia, J., concurring).

This comment has prompted numerous defendants to attack the RICO statute on vagueness grounds. Those attacks have not fared well in the courts. All ten of the federal courts of appeals that have addressed the issue since H.J. Inc. was decided have rejected the RICO vagueness argument. These courts have held that vagueness claims must be considered on the facts of the particular case in which the claim is asserted; in each case the court found that the defendants had adequate notice that their conduct fell within the proscriptions of RICO and that consequently their vagueness challenges, including to RICO's requirements of an enterprise and pattern of racketeering activity, were meritless.

The Court has held that RICO both protects a legitimate "enterprise" from those who would use unlawful acts to victimize it, United States v. Turkette, 452 U.S. 576, 591(1981), and also protects the public from

12

those who would unlawfully use an"enterprise" (whether legitimate or illegitimate) as a "vehicle" through which
"unlawful . . . activity is committed," National Organization for Women, Inc., 510 U.S. [249,] 259 (1994). Moreover, some courts have indicated that an enterprise may not be the victim of the alleged racketeering activity where it would violate the rule against identity between the RICO defendant and the enterprise (see Section II(D)(7) above), such as where a corporate defendant would be held vicariously liable for the racketeering activity of its employees that victimize the corporate enterprise. See, e.g., Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386, 1403-06 (11th Cir. 1994); Liguid Air Corp. v. Rogers, 834 F.2d 1297, 1306 (7th Cir. 1987), cert. denied, 492 U.S. 917 (1989); Haroco v. Am. Nat'l B&T Co. of Chicago, 747 F.2d 384, 401-02 (7th Cir. 1984), aff'd on other grounds, 473 U.S. 606 (1985); Weaver v. Mobile Diagnostech, Inc., 2007 WL 1830712, at **10-11 (W.D. Pa. June 25, 2007); Moses v. Martin, 360 F. Supp. 2d 533, 551 (S.D.N.Y. 2004); Manhattan Telecommunications Corp. v. Dial America Marketing, 156 F. Supp. 2d 376, 382-83 (S.D.N.Y. 2001); Thomas v. Ross, 9 F. Supp. 2d 547, 556-57, n.3 (D. Md. 1998).These cases recognize that their rationale does not apply where the RICO defendant is distinct from the enterprise.

As noted above, RICO's definition of an "enterprise," 18 U.S.C. § 1961(4), includes a "corporation," "labor union" and **"other legal entity."** RICO's legislative history firmly establishes that Congress designed RICO to redress the victimization of these types of enterprises by organized crime and other illegal ventures. See Section I(B)(1) above. For example, the Senate Report regarding RICO states:  Model Penal Code § 240.1 (1980). The Explanatory Note to Section 240.1, explained that:The bribery offense abandons the usual focus upon "corrupt" agreements or a"corrupt" intent and instead spells out with more particularity the kinds of
arrangements that are prohibited. . . . The offense is defined so as not to require proof of an actual agreement or mutual understanding. It thus reaches the inchoate behavior of either party accompanied by a purpose to achieve the prohibited understanding.

**RICO and Electronic Surveillance**
Section 2516(1)(c) of Title 18, as amended in 1970, permits the interception of any wire, oral, or electronic communications when that interception may provide, or has provided, evidence of any offenses punishable under 18 U.S.C. § 1963. Because a RICO violation is based on violations of other statutes, conduct involving violations of these other statutes can also serve as a basis for electronic surveillance, even if not specifically authorized in 18 U.S.C. § 2516, as long as these other offenses are within the scope of RICO. For example, in United States v. Daly, 535 F.2d 434, 439-40(8th Cir. 1976), the defendant argued that the wiretap authorization was used for a purpose (mail fraud) not authorized by 18 U.S.C. § 2516. The court rejected this argument because mail fraud is a
predicate offense under 18 U.S.C. § 1961 and the wiretap order authorized interception of conversations relating to mail fraud racketeering activities violative of 18 U.S.C. § 1962, which is authorized by section 2516.

Evidence of Uncharged Crimes is Admissible to Prove the Existence of the Enterprise,
a RICO Conspiracy, a Defendant's Participation in Both, Continuity of the Pattern of Racketeering Activity and Other Matters In RICO cases, courts typically admit evidence of crimes not specifically charged against a defendant or not committed by the defendant. For example, in United States v. Finestone, 816 F.2d 583, 585-87 (11th Cir.), cert. denied, 484 U.S. 948 (1987), the Eleventh Circuit upheld the admission proper in district where at least one overt act and one predicate act occurred); United States v. Rastelli, 653 F. Supp. 1034, 1054 (E.D.N.Y. 1986) (venue for a conspiracy charge "lies wherever the overt act or the agreement to conspire took place"); Persico, 621 F. Supp. at 857-58 (conspiracy venue proper in any district where an overt act occurred); see also cases cited in n.476 above. I am seeking unspecified damages, thank you.

Date:  June 9, 2017

Signature: _____

Name: AZAEL DYTHIAN PERALES _____
(Typed or Printed)

Address:  P.O. Box 501 Fullerton, California 92836

Residence Address: (Homeless)
Former Residential Address: 535 Williamson Ave. Fullerton, CA 92832
Telephone No.  (714) 732-8532

14